# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TREMAYNE LEWIS, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-18-3412 |
| WARDEN CASEY CAMPBELL,[1] <br> CAPTAIN APERA SCOTT, <br> CAPTAIN ELWYN EDWARDS, <br> CAPTAIN MICHAEL ENNIS, | * <br><br> * | |
| Defendants | * | |

## MEMORANDUM OPINION

Plaintiff Tremayne Lewis, a Maryland Division of Corrections prisoner, alleges that while housed at Jessup Correctional Institution ("JCI") he was assaulted by unidentified members of a Special Operations Group ("SOG") approved by Warden Campbell, supervised by Captains Edwards and Scott, and led by Captain Ennis. Compl. 3, ECF 1. Essentially, Lewis argues that Warden Campbell knowingly permitted correctional officers to use excessive force against him during a cell extraction in violation of the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.

Defendants filed a motion to dismiss or, in the alternative, for summary judgment (ECF No. 12), which I will construe as a motion to dismiss. Lewis has opposed the motion. Opp'n, ECF No. 17. A hearing is not needed to resolve Defendants' motion. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' motion is denied.

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names, as reflected in this opinion.

1

**Background**

Lewis alleges that SOG members assaulted him in his cell on March 8, 2018, at around 2:30 a.m. Compl. 3. The members allegedly shot him with rubber bullets in the right eye and right temple and permitted a "K-9 dog" to bark in his face while they kicked and pepper-sprayed him. *Id.*

Defendants, in response, say Warden Campbell had ordered a "planned Use of Force" against Lewis "because he refused a facility transfer and [was] believed to be in possession of a homemade weapon." Ennis Decl. ¶ 3, ECF No. 12-3.[2] Captain Ennis's declaration asserts that Lewis ignored multiple orders to clear obstructions from his cell and was lying on the floor with his hands behind his back. *Id.* ¶ 4. The team took several minutes to clear enough of the obstruction to open the cell door several inches. When Lewis attempted to grab members of the team, Officer Pence[3] shot multiple non-lethal "beanbag rounds" (as opposed to rubber bullets) through the food port, none of which hit Lewis, according to Defendants. *Id.* ¶¶ 5-6. When Lewis continued to resist, Captain Ennis sprayed multiple one- to two-second bursts of pepper spray into the cell. *Id.* ¶ 7.

Officers entered the cell, "place[d]" Lewis on the ground, and "after a brief struggle" placed him into restraints. *Id.* They then escorted him to the dayroom for a strip search and an evaluation by medical staff prior to transport to North Branch Correctional Institution ("NBCI"). *Id.*; *see also* Medical R. 2, ECF No. 12-4 (March 8, 2018 medical notation as to scrape on his scapula). For this incident, Lewis received a notice stating he had violated prison rules. Ennis Decl. ¶ 8.

---

[2] This opinion cites to pagination assigned by the Court's electronic docketing system. While the opinion includes references to several documents enclosed as exhibits to Defendants' motion, I do not rely on those documents in ruling on the motion.

[3] Pence is not named as a party to this action.

Defendants provide a July 11, 2018 note following an ophthalmology examination for reported "trauma." Medical R. 3. The note states there was "[n]o evidence of any damage to eye – will check non-dilated pupils." *Id.* By October 10, 2018, the follow-up examination noted that any issue of "vision loss" was "resolved." *Id.* at 4. Lewis later complained to nursing staff that he continued to suffer eye pain. *Id.* at 5. X-rays found no evidence of a fracture. *Id.* at 6.

In his opposition response, Lewis submits a declaration disputing Defendants' account. Pl.'s Decl., ECF No. 17-2. Lewis notes that Defendants did not deny the use of a K-9 or that the incident, which was pre-planned, was not videotaped, in contravention to Division of Corrections policy. Opp'n 2-4. Lewis implies he was unable to identify the officers due to this breach of policy. *Id.* at 4. He states that he was not seen by medical staff at JCI after the incident, as Defendants allege, but instead was immediately placed in a van and transported to NBCI. *Id.* at 5.

## Standard of Review

Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4] Rule 12(b)(6) authorizes parties in a civil action to seek the dismissal of a claim or complaint on the grounds that it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 647-48, (D. Md. 2015). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

---

[4] The motion seeks alternative relief in the form of summary judgment under Rule 56. Defendants have submitted several exhibits along with the motion. These submissions, however, are not as thorough as ordinarily I would expect in a case like this. Accordingly, I am construing the motion as a motion to dismiss.

3

Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). A court also may consider matters subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Where, as here, the defendants have submitted numerous exhibits along with their motion, the court may consider such evidence only if it converts the motion to one for summary judgment. Fed. R. Civ. P. 12(d).

**Analysis**

Defendants contend that Lewis has failed to state a cognizable claim. In particular, they argue that the allegations involving Warden Campbell do not support a finding of supervisory liability and, further, that the Complaint fails to specify what actions each of the named defendants took that could be said to have violated his Eighth Amendment rights. Defendants also claim they are entitled to qualified immunity from damages.

Lewis's allegations sufficiently state a cognizable claim for excessive use of force under the Eighth Amendment. Claims of this variety have two components: one objective and one subjective. The objective component asks whether the force applied was sufficiently serious to

establish a cause of action. To meet this standard a prisoner must show that Defendants used something more than "*de minimis*" force. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam) ("nontrivial" force is a sufficient ground for Eighth Amendment excessive force claim). Here, Lewis alleges he was shot with rubber bullets (which, while non-lethal, were nonetheless capable of breaking facial bones and lacerating skin), pepper-sprayed, and taken to the ground while confined in a cell. These are serious allegations, and there can be no question that they meet the objective component of an Eighth Amendment claim.

The second component of an excessive force claim is more nuanced, requiring a court to consider whether the defendants "acted with a sufficiently culpable state of mind," *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), and were wanton "in the infliction of pain," *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). This determination rests on whether force was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019). As the *Brooks* court explained, the question is not whether a reasonable officer could have used force to maintain discipline. Rather, the court must examine the officer's subjective reason for using force. *Brooks,* 924 F.3d at 112-13; *see Graham v. Connor*, 490 U.S. 386, 397–98 (1989) (emphasizing focus on "subjective motivations of the individual officers" under the Eighth Amendment).

Here, Defendants state their actions were undertaken at Warden Campbell's request because Lewis had barricaded himself in his cell and might have had a weapon. At first blush, this statement appears to support their position, as correctional officers "act in a 'good faith effort to

5

maintain or restore discipline' – that is, with a permissible motive – not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113 (quoting *Hudson*, 503 U.S. at 6). But while officers are owed "'wide-ranging deference' in their determinations that force is required to induce compliance with policies important to institutional security," they "cross the line into an impermissible motive . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Id.*

As in *Brooks*, the critical Eighth Amendment question here becomes one of motive: whether firing "multiple" beanbags through a feed slot in Lewis's direction and applying pepper spray was undertaken "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm," *Whitley*, 475 U.S. at 320–21 (1986) (quoting *Johnson*, 481 F.2d at 1033). This question concerning motive is one that generally cannot be examined in the context of a motion to dismiss, and Defendants' motion is inadequately supported to merit consideration as one seeking summary judgment.

Defendants have provided little factual basis to support their defenses. They admit, through Captain Ennis's declaration, that Warden Campbell pre-approved the use of force against Lewis and called on Captain Ennis, who is based in Sykesville, Maryland and specializes in use-of-force supervision, to undertake the task. No reports, statements from Warden Campbell, or other documentation is offered to show that the use of force was necessary, nor are the parameters governing the use of force in such circumstances provided. And critically, Defendants fail to address Lewis's argument that they ignored institutional policy mandating videotaping of use-of-force incidents. Defendants do not discuss why a dog was brought to the cell, whether a weapon was found on Lewis or in his cell, or the outcome of Lewis's notice of infraction. They likewise

6

have not provided medical intake records prepared upon Lewis's arrival at NBCI. It appears that all the participants in the event have not been identified, and those who have been identified – with the exception of Captain Ennis – have not provided affidavits explaining their role in the incident.

In sum, Lewis has satisfied the *Twombly* and *Iqbal* requirements and has adequately stated an Eighth Amendment claim. If discovery fails to demonstrate that the named Defendants were involved in the incident, they may file a motion for summary judgment.

Defendants also raise the defense of qualified immunity. Under the doctrine of qualified immunity, a corrections officer who "has violated a prisoner's constitutional right" is "shielded from liability . . . if an objectively reasonable officer could have believed that his actions were lawful 'in light of clearly established law.'" *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)). Applying a qualified immunity analysis that requires examination of "intent" is difficult but not impossible. *See Thompson v. Virginia*, 878 F.3d 89, 106 (4th Cir. 2017) (applying qualified immunity analysis to excessive force claim under *Whitley* standard). Here, though, Defendants do not cite any Supreme Court or Fourth Circuit cases finding that a plaintiff in circumstances substantially similar to those present here had failed to establish an Eighth Amendment violation. *See Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (stating that, in applying the "clearly established" qualified immunity standard, courts "look ordinarily to 'the decisions of the Supreme Court, [the] court of appeals, and the highest court of the state in which the case arose'" (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999))).

As I already have noted, Defendants' motives cannot be discerned from the Complaint. But, assuming any defendant did act with a culpable state of mind, he reasonably should have known that he was violating well-established law. *See, e.g.*, *Thompson,* 878 F.3d at 102 ("rough

ride" in a van allegedly in retaliation for filing grievances). At the time of the incident, it was clearly established that a corrections officer's use of force in bad faith – not to preserve order or induce compliance, but to punish through the "wanton infliction of pain" – violated a prisoner's Eighth Amendment right. *Williams*, 77 F.3d at 765 (quoting *Whitley*, 475 U.S. at 322).

Accordingly, Defendants' motion, construed as a motion to dismiss, is denied. To assist Lewis as this case proceeds, I am exercising my discretion under 28 U.S.C. § 1915(e)(1) to appoint pro bono counsel to represent him. A separate order follows.

Date: August 30, 2019                                  _____/S/_____
                                                       Paul W. Grimm
                                                       United States District Judge